# Pennsylvania Railroad Company *versus* Zebe and Wife.

*Reciprocal Rights and Duties of Railway Companies and Passengers.— Parents may sue for Loss by Death of Son.*

1. Where a railroad company provides a platform or other safe means of exit from their cars, at a station, it is the duty of passengers to leave by the way provided, unless it be unsafe, or a justifying necessity exist to escape from peril or injury to life or limb: and it is error to admit evidence to be given to the jury that persons were in the habit of getting out of the cars on the side opposite the platform.

2. An action for the loss of a child killed by the negligence or misconduct of a railroad company, was *held* properly brought in the name of both parents, and that the joinder of the mother was not error.

ERROR to the Common Pleas of *Westmoreland county.*

This was an action on the case brought by Nicholas Zebe and Elizabeth Zebe his wife, against the Pennsylvania Railroad Company, to recover damages for injuries which resulted in the death of their minor son Peter Zebe.

[Pennsylvania Railroad Co. *v.* Zebe and Wife.]

The case was tried at August Term 1858, when there was a verdict and judgment in favour of plaintiff, for $1500 damages, and costs.

The case was then removed into this court by defendant; where the judgment of the court below was reversed, and a *venire de novo* awarded. (See 9 Casey 318.)

At November Term 1859, the case was again tried, and resulted in a verdict and judgment in favour of plaintiffs for $600. Whereupon the defendants sued out this writ.

The material facts of the case are fully stated in the former report (9 Casey 318), and need not therefore be repeated here.

The specifications of error were as follows :—1. When requested in the second point submitted by defendants to charge, " That when the deceased left the car, he ceased to be a passenger, and the liability of the defendants, *as common carriers,* ended ; and having been killed after this, this action cannot be sustained, unless the death was the result of gross negligence and wanton injury," the court erred in charging that " this point, as a general proposition, is answered in the affirmative. But if the jury believe there was no safe and convenient platform, and nothing to indicate that it was the duty of plaintiff and son to leave on the north side of the track, but the means of leaving were equally convenient on the one side or the other, then the protection of the company extended to the plaintiff till he would be disengaged from the road and got to a place of safety ; and until then, the liability of defendants, as common carriers, did not end. The jury will decide how the fact was ; and if they find there was a proper platform, we answer this point in the affirmative, unconditionally. But if there was no platform, or safe place of exit, then the liability of the defendants continued till he got away from the cars and the machinery of the road ; and in that aspect, we answer this point in the negative. We repeat, the answer to this point depends upon the fact of whether there was a safe and convenient platform, or means of exit. If the jury find there was such, we answer in the affirmative ; if not, the negative : if the boy was killed before he got to a place of safety."

2. The court erred in negativing the eleventh point submitted by defendants, to wit, " that the father alone had a vested legal pecuniary interest in the services of the deceased ; and the mother had no such interest therein, and therefore there can be no recovery in this action, to which the mother is a party."

3. The court erred in charging the jury in these words : " Had they [the defendants] a safe and convenient means of egress and regress to and from the line of the road at Brinton's station ? in other words, had they a safe and convenient platform ? This is a question for the jury : What kind of a place of exit had they ?

Was it a platform at all? or what purpose was it designed and fitted for? Was it a safe and convenient mode of egress? If so, then we see no evidence of negligence on behalf of the company. If it was not such—that is, a safe and convenient one—then the company neglected a duty which they owed to the safety of passengers; and that was the cause of the plaintiff leaving on the south side; and thus the accident happening, the company would be careless, and responsible for injuries resulting from it. If the jury find there was such platform on the north side, then we see no negligence of the company, and the plaintiff cannot recover. But if the jury should find there was no such safe and convenient place of exit provided by the defendants, then they failed to do that which it was their duty to do, and would be liable in damages, if the plaintiff and son did all that it was their duty to do."

4. The court erred in admitting the evidence of Robert Swan, under the objection by defendant, "that passengers were in the habit of getting off on the south side of the track."

5. The court erred in admitting the evidence of Joseph Smith, under the objection by defendants, "that the witness was in the habit of stopping at that station and getting off on the south side."

*Foster, Stokes & Clark*, for plaintiffs in error.

*Cowan*, for defendants.

The opinion of the court was delivered, January 7th 1861, by

THOMPSON, J.—When this case was before us two years ago, we endeavoured to state the reciprocal duties and obligations of carriers and passengers on railroads: that the law implied a duty on the part of the former to provide " a safe and sufficient road and cars, competent and careful conductors and agents, and safe and convenient means of egress and regress to and from the line of their road;" and on the part of the latter, "to assent to all the company's reasonable rules and regulations, for entering, occupying, and leaving the cars," and as resulting therefrom, if injury befell the passenger, " by reason of his disregard of regulations necessary to the conducting of the business, the company were not liable in damages, even though the negligence of the servants concurred with his own in causing the mischief: Sullivan *v.* Philadelphia and Reading Railroad Company, 6 Casey; per Woodward, J.

The only qualification in the rule, was the necessity of a departure from it under some paramount necessity sufficiently urgent to justify it. It follows, therefore, from all this, that where injury results in the act of leaving a train of cars at a

[Pennsylvania Railroad Co. *v.* Zebe and Wife.]

stopping-place, if the carriers have not provided a safe means of egress from the train, the law will undoubtedly hold them responsible for injuries under such circumstances, unless in case of gross negligence on the part of the passenger. Short of this, the responsibility would remain; for it would be unreasonable to hold the passenger bound to make the best possible selection of the mode of leaving the train in the short time generally allowed for doing so. On the other hand, if a safe platform, or other equally safe means be provided for exit, it is as much the duty of the passenger to leave by it, as it is for him to remain inside of the cars when they are running. The existence of such means of exit indicates as distinctly their purpose, and that it is a regulation of the carriers that they be so used, as do the cars, that their purpose is to carry passengers inside instead of on top. It is as much negligence of the passenger to disregard the proper use of the one as of the other. · He cannot throw the responsibility of injury on the carrier, for non-compliance with the regulations in the one case, more than in the other; excepting, as already said, it be under some justifying necessity.

On the trial, it was proved that the company had a platform on the proper side of the track for trains going west, of from four to six feet wide, and of the length of the train. There was no evidence that it was unsafe, or even inconvenient, or that there was any justifying or controlling necessity on the part of the plaintiff and his son to save themselves from peril to escape by the south side. Voluntarily, therefore, they made their exit at that side, and the latter was killed by the train going west.

The *gravamen* of the plaintiff's charge against the defendants is, that they, having undertaken to carry safely the plaintiff and his son, from Irwin's Station in Westmoreland county, to Brinton's Station in Allegheny county, "did not use care, diligence, and skill in allowing the deceased time and opportunity to get off and away from said cars when they arrived at said Brinton's Station; but, on the contrary, immediately on the arrival at said station, and before the deceased had time to get away from the cars, the said company carelessly and negligently caused an engine or locomotive to be run alongside of the cars, which deceased was attempting to leave, so that the said engine or locomotive caught him," and, passing over his body, killed him.

Assuming that the deceased might choose his mode of exit, the court admitted, under objection, the evidence of two witnesses, that they were in the habit of getting out on the same side as did the plaintiff and his son. The effect of such testimony, it seems to us, was to invite the jury to disregard the legal obligation the deceased was under, to comply with the regulations of the company in leaving their cars by the way provided for that purpose, there being no proof that it was not safe, and no justi-

fying necessity for doing so.  By this we mean a necessity to escape from peril or injury to life or limb.  The admission of the evidence was an abandonment of the rule.  Had there been no platform, or an unsafe one, then the testimony might have been given on the question of the degree of negligence, or otherwise on part of the deceased; but as it was there was no room for it, excepting on the hypothesis that the plaintiff and his son had a right to depart from the cars by any way they might choose, and still hold the company responsible for any injury which might ensue, although they might have done all that the law required of them.  This is not the law.  Responsibility for injury in cases like the present, results from acts of omission or commission.  Where the law defines the duty to be performed, want of performance is followed by responsibility, but if there be performance there is no ground for responsibility.  A carrier of passengers, who provides himself with a sufficient vehicle in all respects, and a safe and skilful driver or conductor, who discharges his duty faithfully, is never responsible for injury.  This is the extent of the legal obligation.  Is there any more reason why a railroad company should be liable on any other terms than those of its undertaking, viz. sufficiency and safety of means adapted to the end, and on a compliance with regulations in performing the engagements by the parties carried?  Evidence like that complained of laid the foundation for a recovery, upon other grounds than a compliance with regulations.  This raised the company's undertaking, and was wrong.  In presence of the undisputed fact, that there was a platform for egress, the plaintiffs were bound to show a better reason for not passing off by it than that two witnesses, out of the hundreds probably, who may have stopped at that station, did so with impunity, although it seems the third attempt resulted in death.  This not only proves the necessity of holding it to be the duty of the company to provide for the safe egress. of the people from their cars, but also the duty of passengers to adopt and use those precautions for their safety.

We regret to prolong this controversy by sending this case to another trial, but as we think the learned judge erred in admitting the testimony alluded to, we reverse for that reason alone.  We see nothing in any of the other assignments of error which call for notice.  The suit was rightly brought in the name of the father and mother of the child, and for the reason assigned the judgment is reversed.

Judgment reversed, and a *venire de novo* awarded.