# Roberts, Appellant, v. Pennsylvania Railroad Company.

*Negligence—Railroad companies—Premature starting of train—Contributory negligence—Platform—Alighting on nonplatform side—Custom.*

In an action against a railroad company to recover damages for personal injuries sustained in consequence of an alleged premature starting of a train from which plaintiff was attempting to alight, the case is for the jury although plaintiff endeavored to alight on the side of the train opposite the platform provided for passengers where it appears that by long established custom, acquiesced in by the officers of the defendant company, large numbers of passengers were in the habit of alighting on the nonplatform side of the train.

Argued Oct. 23, 1912. Appeal, No. 52, Oct. T., 1912, by plaintiff, from order of C. P. No. 3, Allegheny County, May T., 1908, No. 166, refusing to take off nonsuit in case of David Roberts v. The Pennsylvania Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries before KENNEDY, P. J.

The opinion of the Supreme Court states the facts.

The court entered a nonsuit which it subsequently refused to take off. Plaintiff appealed.

*Error assigned,* among others, was the order of the court in refusing to take off the nonsuit.

*Rody P. Marshall,* with him *Thos. M. Marshall,* for appellant.—Whether the plaintiff was guilty of contributory negligence was for the jury, in view of the long established custom of passengers alighting at that station to leave the train on the nonplatform side: Snowden v. Warder, 3 Rawle, 101; McMasters v. Penna. R. R.

Co., 69 Pa. 374; Adams v. Ins. Co., 95 Pa. 348; Philadelphia & Reading R. R. Co. v. Troutman, 11 W. N. C. 453; Taylor v. Canal Co., 113 Pa. 162; Barry v. R. R. Co., 92 N. Y. 289; Kay v. R. R. Co., 65 Pa. 269; Davis v. Ry. Co., 15 Am. & Eng. R. R. Cases 424; Margo v. R. R. Co., 213 Pa. 463; Betts v. Railroad Co., 191 Pa. 575; Boggess v. B. & O. R. R. Co., 234 Pa. 379; Bockelcamp v. R. R. Co., 232 Pa. 66.

*Thomas Patterson,* of *Patterson, Sterrett & Acheson,* for appellee.—Plaintiff was guilty of contributory negligence: Drake v. R. R. Co., 137 Pa. 352; Penna. R. R. Co. v. Zebe, 33 Pa. 318; Penna. R. R. Co. v. Zebe, 37 Pa. 420.

The evidence of the custom to alight on the nonplatform side of the car should have been excluded: Drake v. R. R. Co., 137 Pa. 352; Flanagan v. Railroad Co., 181 Pa. 237.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1913:

This was an action brought by a passenger against a carrier to recover damages for injuries which he alleges he sustained by reason of the premature moving of a train at his destination before he had a reasonable time to alight. On the trial of the cause, the plaintiff having closed his testimony, the court granted a nonsuit which it subsequently refused to take off, and the plaintiff has appealed.

The nonsuit was granted on the ground of the contributory negligence of the plaintiff. The facts of the case, as stated by the learned judge, are substantially as follows: The plaintiff, David Roberts, on the evening of December 24, 1906, became a passenger on the defendant's train from Pittsburgh to Wilkinsburg. The train was crowded, but the plaintiff was able to get a seat about the middle of one of the cars, which arrived at Wilkinsburg about 6 o'clock in the evening and stopped at the station. There was a cinder platform some six or

eight feet wide extending on the right of the east bound track upon which was the train on which plaintiff was a passenger. Plaintiff was well acquainted with the platform arrangement at Wilkinsburg, and when the train reached the station, instead of getting off on the righthand or platform side of the train, followed other passengers, the majority of whom were getting off on the opposite or lefthand or nonplatform side. He was the last passenger leaving the car at the door and proceeded to alight or leave the train on that side because that was a little nearer to his home in the village of Wilkinsburg on that side of the tracks. There were a number of passengers ahead of Roberts getting off on the nonplatform side of the train, but there was no one immediately in front of him getting off on the platform side. As he was descending the steps and having reached the last or next to the last step of the car it was started and he lost his balance and fell with one foot on the track and his leg was run over. It was testified by the plaintiff that as he came upon the platform between the car on which he was riding and that in front of the car immediately in its rear, he saw a man in the uniform of the railroad company standing facing the car which he (plaintiff) was leaving. A number of witnesses testified that for fifteen or twenty years a large majority of the passengers arriving at Wilkinsburg on east bound trains alighted from these trains on the nonplatform side and walked across the ballast and ties of the intervening tracks in order to reach the Wilkinsburg side of the tracks, instead of alighting on the platform side and walking along the platform to the Rebecca and Wood street crossing, and there crossing the tracks, protected by a watchman, who, it was testified, was usually or always there.

We think the learned court below erred in withdrawing the case from the jury. It is well settled that where a carrier has established a safe platform for discharging its passengers, it is their duty to leave the train by that

means of exit, and that if they are injured in alighting on the nonplatform side, there can be no recovery against the carrier. The passenger is required to obey the reasonable regulations of the carrier company, not only while he is in transit but when leaving the train at a station, and if the company has established a means of exit by a platform of which the passenger has knowledge, it is notice to him of a rule that he must leave the train by that means. This is a reasonable precaution to protect the passenger, and a rule which the carrier has the right to insist shall be obeyed. If, however, the carrier waives the rule, and tacitly acquiesces in passengers alighting from the train at another place or on the nonplatform side, it must exercise reasonable care to protect them while they are alighting. The rule requiring passengers to leave the train on the platform side is like other rules regulating the operation of passenger trains, and may be annulled or waived by the authority making them. If a carrier constantly permit passengers in great numbers to leave the train at a station on the nonplatform side for such a length of time as to create a custom to that effect, a jury would be justified in finding that it had waived its rule requiring them to alight on the platform, and would warrant those who knew the custom in leaving on that side of the train. A long and continued acquiescence of the carrier in the use of both sides of the train at any station for alighting purposes would induce the public to believe in the abrogation of the rule requiring passengers to alight on the platform side, and the carrier would be estopped from setting up a disobedience of the rule as a defense to injuries received in alighting on the opposite side.

In the present case it appeared, as stated by the learned trial judge, that for more than twenty years a large majority of the passengers on the east bound trains of the defendant company alighted on the nonplatform side of the road at the Wilkinsburg Station, and that a large majority of the passengers in the car on which the

plaintiff was riding at the time of the accident left it on that side of the train. It also appeared that on that occasion none of the passengers alighted on the platform side. The jury would have been justified in finding, under the evidence, that for possibly twenty or twenty-five years, seventy-five or eighty per cent. of the passengers leaving the east bound train at Wilkinsburg alighted on the nonplatform side. Of course this conduct on the part of the passengers must necessarily have been known to the crews operating the trains. In fact, on the occasion of the accident, a member of the crew saw the passengers alighting from this car on which the plaintiff had traveled. If evidence in any case could establish the continued acquiescence for many years by a carrier in passengers leaving a train on the side opposite the platform, it was present on the trial in the court below. The testimony did not show that a single passenger or a few passengers had on different occasions left the train on the nonplatform side, but established that it was the custom of the great majority of the passengers traveling on the east bound trains on the defendant's line to Wilkinsburg to leave the cars on that side of the train. In other words, if the testimony was credible, it clearly disclosed a permission, equivalent to an invitation, on the part of the defendant to passengers to use the nonplatform side of the train for alighting. It may be true that as a matter of law the company was not required to erect barriers to prevent passengers from leaving the train on the side opposite the platform, but it cannot by its conduct induce them to leave on that side of the train, and then allege it to be a negligent act which relieves the carrier from using reasonable care to protect the passengers so alighting.

In granting the nonsuit, the learned court below relied on Pennsylvania Railroad Company v. Zebe, 33 Pa. 318, 37 Pa. 420, and kindred cases. The question we have been discussing, however, was not decided in any of the cases cited by the court. The decision especially

urged as sustaining the ruling below was the Zebe case reported in 37 Pa. 420, but it does not rule the question presented here. The question of the effect of a custom of passengers to alight on the nonplatform side was not decided on either trial of the Zebe case. On the second trial, the court admitted the testimony of two witnesses that they had been in the habit of getting out on that side of the train. There was also an assignment alleging the court erred in admitting the evidence of a witness "that passengers were in the habit of getting off on the south side of the track." This court, however, did not pass on that assignment, and distinctly ruled the case on the ground that the trial judge had erred in admitting the evidence of the two witnesses that they had alighted on the nonplatform side of the train, saying "we reverse for that reason alone."

The first assignment of error is sustained, and the judgment is reversed with a procedendo.